# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TWENTIETH CENTURY FOX FILM CORPORATION, VIACOM INTERNATIONAL INC., COMEDY PARTNERS, DISNEY ENTERPRISES, INC., PARAMOUNT PICTURES CORPORATION, and WARNER BROS. ENTERTAINMENT, INC.<br><br>*Plaintiffs*,<br><br>v.<br><br>LIME WIRE LLC; LIME GROUP LLC, and MARK GORTON<br><br>*Defendants*. | **No. 12-CIV-0818** |

## PLAINTIFFS' MEMORANDUM OF LAW
### IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

Steven B. Fabrizio
(Bar No. SF-8639)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6040
Facsimile:  (202) 661-4823

Gianni P. Servodidio
(Bar No. GS-0713)
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*

October 8, 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................................1

BACKGROUND ……………………………………………..……………………………. 4

    A.    As found by the *Arista* Court, LimeWire Was Used Almost Exclusively for Copyright Infringement. ....................................................................................4

    B.    As found by the *Arista* Court, Defendants Targeted Infringing Users. .......................6

    C.    As found by the *Arista* Court, Defendants Clearly Knew About the Massive Infringement through LimeWire..................................................................................7

    D.    As Found by the *Arista* Court, Defendants Encouraged and Assisted Infringement.................................................................................................................7

    E.    As Found by the *Arista* Court, Defendants Adopted a Business Model Dependent on Widespread Infringement. ......................................................................8

    F.    As Found by the *Arista* Court, Defendants Failed to Mitigate the Infringement.................................................................................................................8

    G.    As Found by the *Arista* Court, Defendant Gorton Controlled LimeWire and Benefitted From Its Infringing Activities. ....................................................................9

    H.    Plaintiffs' Claims Against the LW Defendants. ..........................................................10

ARGUMENT ...........................................................................................................................11

I.     LEGAL STANDARD FOR SUMMARY JUDGMENT....................................................11

II.    LIMEWIRE USERS DIRECTLY INFRINGED PLAINTIFFS' COPYRIGHTED WORKS. .........................................................................................................................12

III.   LEGAL STANDARD FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT. ........12

IV.   COLLATERAL ESTOPPEL BARS DEFENDANTS FROM RELITIGATING THEIR LIABILITY FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT.............13

    A.    The Holding of *Arista*. .............................................................................................13

    B.    Legal Standard for Applying Collateral Estoppel.......................................................15

         1.    The Issues In this Action and *Arista* Are Identical. ...............................................16

         2.    Defendants' *Grokster* Inducement Liability Was "Actually Litigated" in *Arista*..................................................................................................................18

3.      Defendants Had "A Full And Fair Opportunity" to Litigate in *Arista*. ..................18

4.      Resolution of Defendants' *Grokster* Inducement Liability Was Necessary to Support the *Arista* Court's Final Judgment on the Merits. ...............................19

C.      The Nature of the Copyrighted Works at Issue Is Immaterial for *Grokster* Inducement Liability. ...................................................................................................20

D.      The *Arista* Court Found Defendants Liable for Infringement Occurring During the Applicable Statute of Limitations Period in this Action. .......................................22

V. PRINCIPLES OF *STARE DECISIS* ALSO PREVENT A DIFFERENT OUTCOME FROM *ARISTA*. ..........................................................................................................................24

CONCLUSION ...................................................................................................................26

## <u>TABLE OF AUTHORITIES</u>

CASES

*A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004 (9th Cir. 2001)..............................................12

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).........................................................11-12

*Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124

    (S.D.N.Y. 2009) ............................................................5, 6, 7, 8, 9, 10, 13, 20, 21

*Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398

    (S.D.N.Y. 2011) ................................................................................. *passim*

*Associated Imports v. Int'l Longshoreman's Ass'n*, 609 F. Supp. 595, 597

    (S.D.N.Y. 1985) ............................................................................................25

*Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*,

    402 U.S. 313 (1971).......................................................................................16

*BMG Music v. Gonzalez*, 430 F.3d 888 (7th Cir. 2005) ................................................................12

*Bouchat v. Champion Products, Inc.*, 327 F. Supp. 2d 537 (D. Md. 2003), *aff'd on other
    grounds sub nom. Bouchat v. Bon-Ton Department Stores, Inc.*, 506 F.3d 315 (4th
    Cir. 2007) .............................................................................................18

*Columbia Pictures Industries Inc. v. Fung*, No. CV 06-5578 SVW, 2009 WL 6355911
    (C.D. Cal. Dec. 21, 2009) .......................................................5, 6, 7, 8, 10, 13, 20

*Columbia Pictures Industries, Inc. v. T & F Enterprises, Inc.*, 68 F. Supp. 2d 833 (E.D.
    Mich. 1999).............................................................................................18

*Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325 (S.D.N.Y. 2003)....................17

*Faiveley Transport USA, Inc. v. Wabtec Corp.*, No. 10 CIV 4062 JSR, 2011 WL
    1899730 (S.D.N.Y. May 13, 2011).............................................................................17

*Faulkner v. National Geographic Enterprises Inc.*, 409 F.3d 26 (2d Cir. 2005) .........................16

*Int'l Longshoreman's Ass'n v. Allied Int'l, Inc.*, 464 U.S. 212 (1982)........................................25

*Kremer v. Chemical Construction Corp.*, 456 U.S. 461 (1982) ....................................................15

*Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).........................12

*Metro-Goldwyn- Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) ...........................................................................................................5, 7, 13, 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) .......3, 6, 9, 13, 15, 20

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979).................................................................16

*Satterfield v. Pfizer, Inc.*, No. 04-CV-3782 (KMW)(GWG), 2005 WL 1765708 (S.D.N.Y. July 18, 2005), *aff'd*, 208 F. App'x 59 (2d Cir. 2006).......................................................15, 19

*Scotto v. Almenas*, 143 F.3d 105 (2d Cir. 1998) .........................................................................11

*SEC v. Grotto*, No. 05 Civ. 5880 (GEL), 2006 WL 3025878 (S.D.N.Y. Oct. 24, 2006), *aff'd*, 289 F. App'x 449 (2d Cir. 2008)...................................................................................11

*Security People, Inc. v. Medeco Security Locks, Inc.*, 59 F. Supp. 2d 1040 (N.D. Cal. 1999), *aff'd*, 243 F.3d 555 (Fed. Cir. 2000) (unpublished table decision) ........................ 19-20

*Smith v. Updegraff*, 744 F.2d 1354 (8th Cir. 1984) ....................................................................15

*Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04 CV 9867 (KMW) (GW), 2009 WL 3075661 (S.D.N.Y. Sept. 25, 2009)........................................................................ 15-16, 19

*TeeVee Toons, Inc. v. MP3.com , Inc.*, 134 F. Supp. 2d 546 (S.D.N.Y. 2001)............................17

*United States Department of Justice v. Hudson*, No. 1:06-CV-763, 2007 WL 2461783 (N.D.N.Y. Aug. 24, 2007), *vacated in part on reh'g*, 2009 WL 7172812 (N.D.N.Y. July 08, 2009)........................................................................................................................19

## STATUTES

17 U.S.C. § 106(1) ......................................................................................................................12

## OTHER AUTHORITIES

Fed. R. Civ. P. 56(c) ...................................................................................................................11

Plaintiffs submit this memorandum of law in support of their motion for partial summary judgment as to liability for inducement of copyright infringement under Count 1 of the Complaint as against Defendants Lime Wire LLC ("LW"), Lime Group LLC ("Lime Group") and Mark Gorton ("Gorton") (collectively "the LW Defendants" or "Defendants").

## PRELIMINARY STATEMENT

After years of hotly contested litigation, this Court (Wood, J.) issued a comprehensive summary judgment opinion in May 2010 holding the LW Defendants liable for inducement of copyright infringement. *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y. 2011) ("*Arista*"). Judge Wood found that there was "overwhelming evidence that [the LW Defendants] engaged in purposeful conduct that fostered [copyright] infringement" through the distribution of a peer-to-peer filing sharing software application known as "LimeWire." *Id.* at 426; *see also Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ("*Grokster*") (inducement or intentional facilitation of infringement violates the Copyright Act). Removing any doubt as to Defendants' bad faith, in a separate decision, the *Arista* court later confirmed that each of the LW Defendants was a "willful" copyright infringer under the Copyright Act. *See* Declaration of Gianni P. Servodidio ("Servodidio Decl."), Ex. 4, at 2 (attaching *Arista* Summary Judgment Order of April 26, 2011).

Under well-settled principles of collateral estoppel, Plaintiffs in this case now seek to hold the same LW Defendants liable for the same conduct adjudicated in the *Arista* case, *i.e.*, Defendants' inducement of copyright infringement through the distribution of LimeWire software. The dispositive legal issues in this case and *Arista* are identical. Plaintiffs herein have asserted claims against the LW Defendants for their intentional facilitation of copyright infringement as a result of the distribution and maintenance of LimeWire. In *Arista*, Judge Wood adjudicated this precise issue holding as a matter of law that the LW Defendants, "by

distributing and maintaining LimeWire, intentionally encouraged direct infringement by LimeWire users."  784 F. Supp. 2d at 424.

The other relevant factors considered by courts all readily support application of collateral estoppel in this case.  The *Arista* decision was a summary judgment ruling based on "overwhelming evidence that [Defendants] engaged in purposeful conduct that fostered infringement," and operated as final judgment on the merits.  *Id.* at 426; *see also* Servodidio Decl. Ex. 4 (attaching *Arista* Order of April, 26, 2011).  All of the same LW Defendants in this case were parties to the *Arista* action, and the Court found each of them to be liable for willful inducement of copyright infringement under the Supreme Court's seminal *Grokster* decision.  The LW Defendants further received a full and fair opportunity to defend themselves in the *Arista* case.  Indeed, the *Arista* case was litigated intensely for years and, as the resulting voluminous record attests, the LW Defendants left no stone unturned in their defense of the *Arista* plaintiffs' claims.  *See infra* 18-19.

Finally, the application of collateral estoppel cannot result in unfairness or prejudice to the LW Defendants.  *Arista* was a "bet the company" case for the LW Defendants.  The *Arista* plaintiffs were seeking hundreds of millions of dollars in damages and, ultimately, the LW Defendants paid at least $100 million to settle the case, in the midst of a jury trial to determine the amount of damages.  The LW Defendants availed themselves of every possible procedural and legal argument in *Arista* and yet were held liable on summary judgment based on "overwhelming evidence."  784 F. Supp. 2d at 426.  The LW Defendants also knew that other copyright owners would bring claims against them for the massive copyright infringement caused by their conduct – indeed other copyright owners already had.  *See* Servodidio Decl. Ex. 9 (attaching complaint filed in *EMI April Music Inc., et al. v. Lime Wire LLC, et al.*, No. 10-civ-4695 (S.D.N.Y. June 6, 2010)).  The LW Defendants responded to at least one suit by entering

into a formal agreement to let the decision in the *Arista* case control the outcome in the later-filed case. *Id.* at Ex. 8 (attaching complaint in *Merlin BV v. Lime Wire LLC, et al.*, No. 11-civ-4822 (S.D.N.Y. July 13, 2011)).

There can be no credible argument against the application of collateral estoppel here. Neither of the two principal arguments proffered by Defendants is even colorable.

First, the LW Defendants argue that the *Arista* case was brought by record companies and much of the evidence focused on music-related infringement. But that is not legally relevant. As the Supreme Court held in *Grokster*, the liability of a defendant for inducement of copyright infringement does not hinge on inducement of specific copyrighted works or types of works. Rather, it is the distribution of the software with culpable intent that gives rise to liability. *Grokster,* 545 U.S. at 940, n.13. The *Grokster* case, which involved both music and movie industry plaintiffs, itself disposes of the LW Defendants' argument. In *Grokster*, the peer-to-peer software at issue was used overwhelmingly for music infringement and substantially all the evidence focused on music-related infringement. Yet, the Supreme Court found defendants' inducement of infringement "unmistakable" and, on remand, the district court granted summary judgment in favor of music industry plaintiffs *and separate movie industry plaintiffs* – without a single word distinguishing the two types of content. The standard for inducement is content neutral, and the holding of the court in *Arista* that the LW Defendants "intended to encourage infringement by distributing LimeWire" applies equally to Plaintiffs' works at issue in this case.

Second, the LW Defendants argue that the *Arista* case involved a different period of time. But that is simply not true. The LW Defendants misconstrue the time period at issue in the *Arista* case. In fact, the relevant time periods in this case and in *Arista* directly overlap. The *Arista* court granted summary judgment as to the LW Defendants' secondary copyright liability in May 2010 and granted summary judgment as to the LW Defendants' liability for thousands of

specific direct infringements by LimeWire users in April 2011. *See Arista*, 784 F. Supp. 2d at 409 & *1; Servodidio Decl. Ex. 1 (attaching *Arista* Summary Judgment Order of April 28, 2011). Neither opinion suggests that the court considered the LW Defendants' liability only for particular time periods or for particular versions of the LimeWire software. To the contrary, as described herein, approximately 90% of the copyrighted works for which the Court found the LW Defendants liable were infringed between February 2009 and October 26, 2010, when the *Arista* injunction issued. The works on which Plaintiffs seek to hold the LW Defendants liable in this action were infringed during the same February 2009 through October 2010 time period. Thus, the *Arista* case covers precisely the period at issue in this action.

In sum, the circumstances of this case overwhelmingly support application of collateral estoppel with respect to the LW Defendants' liability for inducement of copyright infringement.

## BACKGROUND

Until shut down by court order in October 2010, the LW Defendants distributed and maintained the well known LimeWire software. Users by the tens of millions were attracted to LimeWire to access – for free – infringing copies of virtually any type of copyrighted content, including popular movies, television shows, sound recordings, software programs, and video games. The LW Defendants facilitated and encouraged this infringement, and built an entire business on selling software to copyright infringing users and advertisements to business partners who wanted to reach Defendants' infringing user base. All of the material facts were found to be undisputed based on the record before the court in *Arista*.

### A. As found by the *Arista* Court, LimeWire Was Used Almost Exclusively for Copyright Infringement.

The LW Defendants created and released the Limewire software in 2000. Using peer-to-peer file trading technology, LimeWire permitted its users to upload and download digital files

across two different file trading networks.  First, the so-called "Gnutella network" – one of the same networks involved in the *Grokster* case – allowed LimeWire users to download copies of files stored on the computers of other users of the network.  Using LimeWire, users could access the network and search the computers of other users to locate and download files corresponding to popular copyrighted content.  *Arista*, 784 F. Supp. 2d at 409, 426.

In 2006, Defendants modified LimeWire to allow users to conduct searches and download files through a second network, the "BitTorrent" network, in order to attract more users seeking movie and television content.  *See* Declaration of Travis Hill of Irdeto BV ("Irdeto Decl.") ¶ 4; *see generally Columbia Pictures Indus., Inc. v. Fung,* 2009 WL 6355911, No. CV 06-5578, at *10 (C.D. Cal. Dec. 21 2009) (describing BitTorrent downloading).  Like the "Gnutella" network, the BitTorrent network is a peer-to-peer network; BitTorrent simply uses a different file trading protocol – one designed and optimized for downloading and distributing large video files, predominantly movies and television shows.  *Fung*, 2009 WL 6355911, at *10.  With BitTorrent, users simultaneously download small pieces of the content file from as many other users as possible and, as soon as pieces are downloaded, the downloading user automatically begins distributing the pieces to others.  In this way, files download faster.  *Id.*

As the *Arista* court found, LimeWire was used overwhelmingly for copyright infringement:  the uncontroverted evidence established that "98.8% of the files requested for download through LimeWire [were] copyright protected and not authorized for free distribution."  *Arista*, 784 F. Supp. 2d at 424.  As numerous courts have recognized, "the staggering scale of infringement makes it more likely that [defendants] condoned illegal use, and provides the backdrop against which all of [defendants'] actions must be assessed."  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 454 F. Supp. 2d 966 (C.D. Cal. 2006) ("*Grokster*

*II*"); *Arista LLC v. Usenet.com, Inc*., 633 F. Supp. 2d 124, 151-52 (S.D.N.Y. 2009)

("*Usenet.com*"); *Fung,* 2009 WL 6355911, at *4 (same).

While LimeWire (like *Grokster*) was used predominantly for downloading music files, the LW Defendants also ensured LimeWire would be attractive to users seeking infringing copies of movies and television programs. In addition to adding the BitTorrent network, which was notorious as a network rife with movie and television infringement, *Fung,* 2009 WL 6355911, at *9, the LW Defendants specifically customized LimeWire to allow users to search for movie files by MPAA ratings (*i.e*., G, PG-13, R), and even the name of a director or studio. Irdeto Decl. ¶ 6 & Ex. B.

### B. As found by the *Arista* Court, Defendants Targeted Infringing Users.

The *Arista* court found that "LW marketed LimeWire to users of Napster and similar programs, and promoted Limewire's infringing capabilities." *Arista*, 784 F. Supp. 2d at 428. Indeed, following Napster's demise, LW announced that it expected 30 percent, "[w]ith possibly up to 100 percent," of Napster's infringing users to switch to LimeWire and similar programs, such as Kazaa and Morpheus (two of the software applications at issue in *Grokster*). *Id.* at 427 (quotation marks omitted). As the court found, the LW Defendants also conducted a marketing campaign whereby Google users who entered certain search queries, such as "replacement napster," "napster mp3," "napster download," "kazaa morpheus," "mp3 free download," and dozens of other phrases containing the words "napster," "kazaa," or "morpheus," would see an advertisement leading them to the LimeWire website. *Id*. Thus, the LW Defendants promoted LimeWire through direct reference and comparison to notorious infringement-fostering programs. *Id.* at 427-28; *see also Grokster*, 545 U.S. at 939 (fact that defendant "showed itself to be aiming to satisfy a known source of demand for copyright infringement" supported

inducement liability*);*Usenet.com*, 633 F. Supp. 2d at 152 (defendants affirmatively solicited former users of notorious file-sharing services).

### C.   As found by the *Arista* Court, Defendants Clearly Knew About the Massive Infringement through LimeWire.

As the *Arista* court found, the LW Defendants were well aware that overwhelming use of LimeWire was for copyright infringement.  *Arista*, 784 F. Supp. 2d at 426-27.  Among other incriminating evidence, internal LW documents acknowledged (i) that "the only information being shared on peer networks are media files"; (ii) that the "[s]haring [of] media files is bringing the initial user base" to LimeWire; and (iii) that "25% of LimeWire's users were 'hardcore pirates.'"  *Id.* at 426 (internal quotation marks to Pl. SUF omitted).  As the court observed, LW employees even kept a file of media articles about widespread piracy on LimeWire candidly labeled "Knowledge of Infringement."  *Id.* at 427.

### D.   As Found by the *Arista* Court, Defendants Encouraged and Assisted Infringement.

The *Arista* court found that the LW Defendants encouraged infringement in many ways, including by encouraging "all LimeWire users [to] share generously with one another," and by configuring LimeWire's "default settings" so "all files that a user downloads through LimeWire [were automatically made] available to other LimeWire users for download."  *Id.* at 410 n.6 (internal quotation marks to Pl. SUF omitted).  The court also found that LW "actively assisted LimeWire users in committing infringement" by providing technical assistance to users downloading copyright infringing files.  *Id.* at 428; *see also Usenet.com*, 633 F. Supp. 2d at 153 (providing technical assistance to infringers is evidence of intent to foster infringement); *Grokster II*, 454 F. Supp. 2d at 987 (same); *Fung*, 2009 WL 6355911, at *12 (same).

### E.   As Found by the *Arista* Court, Defendants Adopted a Business Model Dependent on Widespread Infringement.

The *Arista* court further found that LimeWire's growth "depended greatly on LimeWire users' ability to commit infringement through LimeWire." 784 F. Supp. 2d at 429. According to the court, "LW's sources of revenue depend[ed] on LimeWire attracting the massive user population generated by its infringement-enabling features." *Id.* "LW's commercial success, therefore, [was] derived largely from the high-volume use of LimeWire, most of which was infringing." *Id.*; *see also Usenet.com,* 633 F. Supp. 2d at 153 (finding that infringing content was "backbone of their business model"); *Fung,* 2009 WL 6455911, at *14-15 (defendants derive revenue by attracting users to the sites with "popular works").

### F.   As Found by the *Arista* Court, Defendants Failed to Mitigate the Infringement.

The *Arista* court found that the LW Defendants never "implemented in a meaningful way any of the technological barriers and design choices that were available to diminish infringement through file-sharing programs." 784 F. Supp. 2d at 429. For example:

- In 2006, LW developed an optional hash-based content filter. However, as found by the court, "LW could have made the hash-based content filter mandatory for all LimeWire users" – but did not. *Id.* at 430. Instead, LW designed LimeWire so as to make the hash filter *voluntary* at a user's election. Thus, a filter that was supposed to prevent LimeWire users from downloading infringing files could be turned on or off at the user's election. That was not just meaningless, it was disingenuous.

- LW considered a filter that would use "acoustic fingerprinting" to identify copyrighted files, but never implemented it.

- LW considered – but did not implement – a user education plan designed to inform users about copyright infringement.

- And, LW "was aware of other filtering mechanisms," *id.* at 430, such as keyword filtering, but never implemented any of them.

When LW did adopt filtering, they used it only to limit infringement of recordings purchased from the LimeWire online store – *i.e.*, recordings on which LW made money. *Id.* As

the *Arista* court found, LW's "selective filtering" only confirmed "the company's intentional decision not to employ any such technologies in a way that meaningfully deters LimeWire users' infringing activities."  *Id.*

The *Arista* court also dismissed the LW Defendants' argument that they added a "notice" requiring users to check a box stating that they did not intend to use LimeWire for copyright infringement.  According to the court, "[t]he notice and 'statement of intent' requirement … do not constitute meaningful efforts to mitigate infringement."  *Id.* at 431; *see also, e.g.*, *Grokster*, 545 U.S. at 926 (emails warning users about infringing content does not immunize software distributor from liability for inducement of copyright infringement); *Usenet*, 633 F. Supp. 2d at 131 (finding defendant file sharing website liable for inducement of copyright infringement despite 'official policy prohibiting the upload of unauthorized, including copyrighted, content"); *id.* at 142 n.20 ("lip service" to obligations under the copyright act cannot immunize a defendant from liability because "[a]ctions speak louder than words").

Ultimately, the *Arista* court found that the LW Defendants did nothing to prevent infringement because the "commercial success" of LimeWire depended on high volumes of infringement:  "LW chose not to implement any meaningful infringement-reduction strategies in part because it recognized that, 'as long as there were other [P2P] applications that didn't filter,' LimeWire users would respond to filtering by switching 'to another [P2P application] that doesn't have that filtering behavior or that is less aggressive in making fewer files available.'" *Arista*, 784 F. Supp. 2d at 429, 431 (record citation omitted).

### G.   As Found by the *Arista* Court, Defendant Gorton Controlled LimeWire and Benefitted From Its Infringing Activities.

At all times relevant, Defendant Gorton was the founder, Chairman and sole director of LW.  *Arista*, 784 F. Supp. 2d at 438-39.  As such, Gorton directed and benefited from many of

the activities that give rise to LW's liability for copyright infringement. *Id.* at 439. As the *Arista* court found, Gorton was the company's "ultimate decision maker"; his approval was required for "any major strategic and design decisions," and he had the authority to "veto" decisions regarding the development of LimeWire. *Id.* at 438 (quoting from record).

Importantly, the *Arista* court found as undisputed that Gorton "conceived of LimeWire" and "directed and approved many aspects of LimeWire's design and development." *Id.* This included the choice of technologies (including the decision to incorporate BitTorrent), and the decision not to implement meaningful filtering. *Id.* Gorton's participation in LW's infringing activities extended to "decisions regarding LW's public relations and advertising efforts" and "marketing LimeWire to Napster users." *Id.*

Gorton was also the CEO and sole Director of Lime Group, which owned LW. According to the *Arista* court, "Lime Group was intimately involved in LW's operations." *Id.* "While LW and Lime Group are formally separate companies, … Gorton operated them 'as a single company.'" *Id.*

In short, Gorton directed and benefited from LW's inducement of infringement through LimeWire. *Id.* at 439; *see also Usenet.com*, 633 F. Supp. 2d at 158-59 (finding liability for officer who directed and benefitted from infringing conduct); *Fung,* 2009 WL 6355911 at *18 (same).

### H.   Plaintiffs' Claims Against the LW Defendants.

Plaintiffs commenced this action against the LW Defendants on February 1, 2012, for inducement of copyright infringement, among other claims. As set forth in the Complaint and the declarations filed herewith, Plaintiffs seek to hold defendants liable for acts of direct infringement by LimeWire users occurring between February 1, 2009 (the applicable statute of

limitations cutoff) and October 26, 2010 (when the *Arista* court entered an injunction effectively shuttering LimeWire).  Servodidio Decl. Ex. 3 (attaching *Arista* Consent Injunction).

In connection with their antipiracy efforts, Plaintiffs have collected and preserved detailed evidence of direct infringement demonstrating that LimeWire users used LimeWire to download and distribute files containing Plaintiffs' works during the relevant statutory period in this case.  The works at issue in this case include some of the most popular entertainment programs in the world including *Avatar*, *Desperate Housewives*, *South Park*, *Spongebob Squarepants*, *Star Trek*, and *Harry Potter*.  The evidence establishes that LimeWire users infringed Plaintiffs' copyrighted works in suit millions of times within the relevant limitations period.  Irdeto Decl. Exs. C-F; Declaration of Peer Media Technologies, Inc. ("Peer Media Decl.") Ex. B.

## ARGUMENT

### I.    LEGAL STANDARD FOR SUMMARY JUDGMENT.

Summary judgment is appropriate where there is no "genuine [issue] as to any material fact and... the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In opposing summary judgment, the non-moving party may not rely on "conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998), or on mere denials or unsupported alternative explanations of its conduct.  *See SEC v. Grotto*, No. 05-Civ-5880 (GEL), 2006 WL 3025878, at *7 (S.D.N.Y. Oct. 24, 2006), *aff'd*, 289 F. App'x 449 (2d Cir. 2008).  Instead, the non-moving party must set forth "significant, probative evidence" – demonstrating "more than [simply] ... some metaphysical doubt as to the material facts" – from which a reasonable fact finder could decide in its favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 260-61 (1986) (quotation marks omitted); *Matsushita Elec. Indus. Co. Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

## II.   LIMEWIRE USERS DIRECTLY INFRINGED PLAINTIFFS' COPYRIGHTED WORKS.

To hold the LW Defendants secondarily liable for copyright infringement, Plaintiffs must demonstrate that they own copyrights that have been directly infringed by LimeWire users.  *E.g.*, *Arista* 784 F. Supp. 2d at 422; *A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 n.2 (9th Cir. 2001) ("Napster II").  Neither issue is genuinely in dispute here.  Plaintiffs own the copyrights or appropriate exclusive rights to the motion pictures and television shows identified in the declarations of Plaintiffs' representatives filed herewith.  *See* Plaintiffs' Statement of Undisputed Facts ("SUF") ¶ 1.  Additionally, Plaintiffs present indisputable evidence that those copyrighted works – were directly infringed by LimeWire users during the applicable statute of limitations period.  SUF ¶ 4.  Without authorization or legal right, LimeWire users have both downloaded (*i.e.*, reproduced) and distributed Plaintiffs' copyrighted works, thus violating Plaintiffs' exclusive rights under the Copyright Act to reproduce and distribute their copyrighted works.  *E.g.*, 17 U.S.C. § 106(1) (reproduction), § 106(3) (distribution); *Napster II*, 239 F.3d at 1013-14 (downloading and distribution through peer-to-peer network is copyright infringement); *BMG Music v. Gonzalez*, 430 F.3d 888, 890-91 (7th Cir. 2005) (same).[1]

## III.   LEGAL STANDARD FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT.

"[O]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for

---

[1]  As was done in *Arista*, for purposes of establishing liability – and to narrow the issues germane to the Court's resolution of the collateral estoppel issue – Plaintiffs have submitted summary judgment evidence demonstrating ownership and infringement of a small sample of the total universe of infringed works at issue in this case.  *See* SUF ¶ 4.  Plaintiffs of course do not suggest the issue direct infringement of Plaintiffs' works by LimeWire users can be decided through the application of collateral estoppel.  Plaintiffs will establish ownership and infringement of approximately 2,000 additional copyrighted works at or in advance of a trial on damages.  Thus, the LW Defendants will have every opportunity to attempt to challenge Plaintiffs' ownership and infringement evidence at trial.

the resulting acts of infringement by third parties." *Grokster*, 545 U.S. at 919. Thus, "the

inquiry focuses on the defendant's intent, which can be shown by evidence of the defendant's

expression or conduct." *Grokster II*, 454 F. Supp. 2d at 985 (granting summary judgment to

copyright holders on inducement claim); *Usenet.com*, 633 F. Supp. 2d at 153 (same); *Arista*, 784

F. Supp. 2d at 431 (same); *Fung*, 2009 WL 6355911, at *15 (same).

Inducement liability does not depend upon proof that any particular acts of infringement

were induced. Rather, as the Supreme Court made clear, "the distribution of a product can itself

give rise to liability where evidence shows that the distributor intended and encouraged the

product to be used to infringe. In such a case, the culpable act is not merely the encouragement

of infringement but also the distribution of the tool intended for infringing use." *Grokster*, 545

U.S. at 940 n.13; *Fung*, 2009 WL 6355911, at *10 (same). Thus, under *Grokster*, inducement

liability has three elements: "[1] intent to bring about infringement … [2] distribution of a

device suitable for infringing use [here the LimeWire software] … [and 3] evidence of actual

infringement by recipients of the device, the software in this case." *Grokster*, 545 U.S. at 940.

## IV. COLLATERAL ESTOPPEL BARS DEFENDANTS FROM RELITIGATING THEIR LIABILITY FOR INDUCEMENT OF COPYRIGHT INFRINGEMENT.

### A. The Holding of *Arista*.

In May 2010, the *Arista* court granted summary judgment against the LW Defendants on

the claim of inducement of copyright infringement. After making detailed findings on an

uncontroverted record, the Court summarized its conclusion as follows:

> In conclusion, the evidence shows LW has engaged in purposeful
> conduct that fostered infringement, with the intent to foster
> infringement. LW distributes LimeWire, and (1) is aware that
> LimeWire's users commit a substantial amount of copyright such
> infringement; (2) markets LimeWire to users predisposed to
> committing infringement; (3) ensures that LimeWire enables
> infringement and assists users committing infringement; (4) relies
> on the fact that LimeWire enables infringement for the success of

> its business; and (5) has not taken meaningful steps to mitigate infringement.

*Arista*, 784 F. Supp. 2d at 431.  The *Arista* court further found that Lime Group and Gorton were liable for LW's inducement of infringement.  *Id.* at 438-39.

In a second order, dated April 26, 2011, the *Arista* court confirmed that the LW Defendants' copyright infringement was "willful" under the Copyright Act, meaning that it was done intentionally or with reckless disregard of the copyright holders' rights.  Servodidio Decl. Ex. 4 (attaching *Arista* Order of April, 26, 2011) ("The Court's May 2010 decision did establish, as a matter or law, that Defendants' conduct was 'willful' within the meaning of Section 504(c)(2)" of the Copyright Act).

In a third order, dated April 28, 2011, the *Arista* court addressed Defendants' liability for LimeWire users' infringement of thousands of individual copyrighted works owned by the *Arista* plaintiffs.  The *Arista* plaintiffs submitted evidence of 11,205 acts of infringement – *i.e.*, unauthorized downloads or distributions of their copyrighted works – that occurred between October 2004 and August 2010.  Servodidio Decl. Ex. 5 (attaching *Arista* Plaintiffs Final List of Sound Recordings).  Approximately 90% of those acts of infringement took place in 2009 or later, *i.e.*, the same time period at issue in this case.  *Id.*; *see* Servodidio Decl. Ex. 6 (attaching chart showing infringements by date).  The court granted summary judgment in favor of the *Arista* plaintiffs, and against the LW Defendants, finding as a matter of law that the LW Defendants were liable for inducing each of those infringements.  Servodidio Decl. Ex. 1 (attaching *Arista* Amended Order and Opinion of April 28, 2011); *id.* at Ex. 4 (attaching *Arista* Order of April, 26, 2011).  It was Defendants' continual distribution of LimeWire throughout the entire period, with culpable intent, that gave rise to the LW Defendants' inducement liability.  *Grokster*, 545 U.S. at 940 n.13.

**B.   Legal Standard for Applying Collateral Estoppel.**

Collateral estoppel bars "a party from relitigating an issue which has previously been decided against him in a proceeding in which he had a fair opportunity to fully litigate the point." *Satterfield v. Pfizer, Inc.*, No. 04-CV-3782 (KMW)(GWG), 2005 WL 1765708, at *7 (S.D.N.Y. July 18, 2005) (quoting *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991)), *aff'd*, 208 F. App'x 59 (2d Cir. 2006).  The doctrine of collateral estoppel serves an important function in our judicial system:  "[C]ollateral estoppel 'relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication.'"  *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 466 n.6 (1982) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980)).  It is a doctrine "borne of the recognition that 'endless litigation leads to chaos; that certainty in legal relations must be maintained; and that after a party has had his day in court, justice, expediency and preservation of the public tranquility requires that the matter be at an end.'"  *Smith v. Updegraff*, 744 F.2d 1354, 1362 (8th Cir. 1984) (quoting *Schroeder v. 171.74 Acres of Land*, 318 F.2d 311, 314 (8th Cir. 1963)).  As such, the Supreme Court has long recognized that collateral estoppel applies both offensively and defensively.  *See, e.g.*, *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 326-27 (1979).

It is also well-established that collateral estoppel can be raised by a non-party to the proceeding from which the preclusive effect arises:  "The doctrine of collateral estoppel allows a party to 'foreclose the [defendant] from litigating an issue the [defendant] has previously litigated unsuccessfully in an action with another party.'"  *See Stonewell Corp. v. Conestoga Title Ins. Co.*, No. 04 CV 9867 (KMW) (GW), 2009 WL 3075661, at *5 (S.D.N.Y. Sept. 25, 2009) (quoting *Parklane Hosiery*, 439 U.S. at 326 n. 4); *see also Blonder-Tongue Lab., Inc. v. University of Ill. Found.*, 402 U.S. 313, 350 (1971).

Collateral estoppel is warranted when:  (1) the issues of both proceedings are identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) the party against whom collateral estoppel is to be applied had a "full and fair opportunity" to litigate the issue, and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.  *Faulkner v. Nat'l Geographic Enters., Inc.*, 409 F.3d 26, 37 (2d Cir. 2005) (quoting *Gelb v. Royal Globe Ins. Co.,* 798 F.2d 38, 44 (2d Cir.1986)).

In *Parklane Hosiery*, the Supreme Court recognized that trial courts have broad discretion to apply collateral estoppel.  439 U.S. at 326 n.4.  Here, each of the factors strongly supports application of collateral estoppel to bar the LW Defendants from relitigating their liability for inducing copyright infringement.

### 1.    The Issues In this Action and *Arista* Are Identical.

The issues before the Court in *Arista* and this action unquestionably are the same.  The *Arista* plaintiffs brought claims against the LW Defendants for inducement of copyright infringement based on the distribution of LimeWire.  The *Arista* court applied the legal standard adopted by the Supreme Court in its seminal *Grokster* decision and found "overwhelming evidence that LW engaged in purposeful conduct that fostered infringement"; indeed "that LW *intended* to encourage infringement by distributing LimeWire."  *Arista*, 784 F. Supp. 2d at 426 (emphasis in original).

In the present case, Plaintiffs have asserted the same *Grokster* inducement claim against the same LW Defendants based on the same conduct at issue in *Arista*.  Plaintiffs here assert that the LW Defendants "intended to encourage infringement by distributing LimeWire."  *See, e.g.,* Complaint, Docket # 1, Count 1 ("Inducement of Copyright Infringement"), ¶ 34 ("Defendants intended to encourage the infringement occurring through" LimeWire).  The only elements of Plaintiffs' claims that are not identical to those in the *Arista* case are the ownership of copyrights

and direct infringement of specific copyrighted works.  Plaintiffs do not seek to preclude litigation of those issues, but rather submit declarations, based on incontrovertible facts, demonstrating Plaintiffs' entitlement to summary judgment on ownership and direct infringement.

Courts have not hesitated to apply collateral estoppel under similar circumstances.  For example, in *TeeVee Toons, Inc. v. MP3.com, Inc.*, 134 F. Supp. 2d 546, 546-47 (S.D.N.Y. 2001), plaintiffs filed claims for copyright infringement against a defendant who had previously been found liable for willful copyright infringement based on its operation of an infringing Internet service known as "My.Mp3,com."  The plaintiffs in the *TeeVee Toons* case owned different copyrighted works than those at issue in the earlier *MP3.com* case and thus, as here, the determination of ownership and direct infringement of specific works in the two cases were different.  Nevertheless, the court held that collateral estoppel barred relitigation of all the other elements of the claim noting that "plaintiffs stand in all essential respects in exactly the same position as the primary plaintiff [in the earlier action]."  *Id.*  As a result, so long as the new plaintiffs proved ownership of copyrighted works and direct infringement through defendant's Internet service, the defendant was estopped from arguing that it was not liable for that infringement.  *Id.*; *see also, e.g., Country Road Music, Inc. v. MP3.com, Inc.*, 279 F. Supp. 2d 325, 329 (S.D.N.Y. 2003) (finding that collateral estoppel precluded MP3.com from relitigating its liability for alleged copyright infringement); *Faiveley Transport USA, Inc. v. Wabtec Corp.*, No. 10 Civ. 4062 (JSR), 2011 WL 1899730, at *5-7 (S.D.N.Y. May 13, 2011) (applying collateral estoppel for misappropriation of trade secrets); *Bouchat v. Champion Prods., Inc.*, 327 F. Supp. 2d 537, 543-45 (D. Md 2003) (applying collateral estoppel where defendant in second action was downstream copyright licensee of defendant in prior copyright infringement litigation), *aff'd sub nom Bouchat v. Bon-Ton Dep't Stores, Inc.*, 506 F. 3d 315 (4th Cir. 2007);

*Columbia Pictures, Inc. v. T&F Enters., Inc.*, 68 F. Supp. 2d 833, 838-40 (E.D. Mich. 1999) (collateral estoppel barred relitigation of finding of infringement in criminal trial in subsequent civil action).

### 2. Defendants' *Grokster* Inducement Liability Was "Actually Litigated" in *Arista*.

It cannot be disputed that the LW Defendants were parties to the *Arista* case and that the issue of the LW Defendants' liability under *Grokster* for distributing LimeWire with the object of fostering copyright infringement was actually litigated.  Indeed, it was the central issue in the case.  *See, e.g.*, *Arista*, 784 F. Supp. 2d at 424-25.

### 3. Defendants Had "A Full And Fair Opportunity" to Litigate in *Arista*.

The LW Defendants cannot credibly dispute that they had a full and fair opportunity to litigate the *Arista* case.  A review of the record confirms that over seven million pages of documents were produced between the *Arista* plaintiffs and the LW Defendants and, 32 fact witnesses and five expert witnesses were deposed.  *See* Servodidio Decl. Ex. 2, at 14-17 (attaching *Arista* Plaintiffs Reply SUF).  In the LW Defendants' support of their own summary judgment motions on the same issues, and in opposition to the *Arista* plaintiffs' summary judgment motion, Defendants submitted 16 volumes of exhibits and over 30 declarations, and made five separate evidentiary motions.  *See Arista* Docket, No. 06-civ-5936, *passim* (S.D.N.Y.).  The Court considered it all, issuing 30 pages of factual findings and legal holdings directly addressing the copyright claims against the LW Defendants.  *See Arista*, 784 F. Supp. 2d 398.

Plainly, the LW Defendants had every incentive to litigate the issues vigorously in light of the magnitude of the *Arista* plaintiffs' claims – and the record attests that the LW Defendants did in fact litigate vigorously.  The *Arista* case was a "bet the company" litigation for the LW Defendants.  The finding of liability against them effectively forced the shut down of LimeWire;

and the ultimate settlement (reached during the course of a jury trial on damages) required the

LW Defendants to pay the *Arista* plaintiffs at least $100 million.  Servodidio Decl. Ex. 7

(attaching *Arista* satisfaction of monetary judgment).

Nor can there be any different procedural opportunities available to the LW Defendants

in this case, as this case is pending in the same Court.  There is no credible argument that the LW

Defendants could not or did not fully and fairly litigate these issues in *Arista*.  *See Stonewell*,

2009 WL 3075661 at *7 (full and fair opportunity afforded where judgment was "based on a

proceeding in which [the estopped party] exercised control of the presentation on behalf of a

party and [had] the opportunity to present proof and arguments on the issues litigated") (quoting

*United States v. Davis*, 906 F.2d 829, 833 (2d Cir. 1990), also citing *US DOJ v. Hudson*, 1:06-

CV-763 (FJS), 2007 WL 2461783, at *3 (N.D.N.Y Aug. 24, 2007) ("The Second Circuit has

adopted a broad definition of what qualifies as a full and fair opportunity to litigate an issue"),

*vacated in part on reh'g*, 2009 WL 7172812 (N.D.N.Y. July 8, 2009).

### 4. Resolution of Defendants' *Grokster* Inducement Liability Was Necessary to Support the *Arista* Court's Final Judgment on the Merits.

Finally, there can be no dispute that the *Arista* decision operated as a final judgment on

the merits or that the court's resolution of the *Grokster* inducement issue was necessary to

support the judgment.  *Satterfield*, 2005 WL 1765708, *13-14 (applying collateral estoppel based

on grant of summary judgment); *Security People, Inc. v. Medeco Security Locks, Inc.*, 59 F.

Supp. 2d 1040, 1045 (N.D. Cal. 1999) ("A disposition by summary judgment is a decision on the

merits, and it is as final and conclusive as a judgment after trial"), *aff'd*, 243 F.3d 555 (Fed. Cir.

2000) (unpublished table decision).  Indeed, *Grokster* inducement was the only copyright

infringement theory on which the *Arista* court based the LW Defendants' liability.  *Arista*, 784 F.

Supp. 2d at 431, 343 (finding triable issues precluding summary judgment on theories of contributory and vicarious liability).

*   *   *   *

As each of the four factors for applying collateral estoppel have unquestionably been met, summary judgment should be granted on the basis of collateral estoppel and the LW Defendants should be precluded from relitigating their liability for inducement of copyright infringement under *Grokster*.

### C.   The Nature of the Copyrighted Works at Issue Is Immaterial for *Grokster* Inducement Liability.

In pre-motion discussions, the LW Defendants have argued that the issues in the two cases are not identical because the *Arista* case involved infringement of music whereas this action involves infringement of motion pictures and television programs.  That distinction, however, is legally irrelevant and does not undermine the application of collateral estoppel.

In *Arista*, the only relevant issue was whether, under *Grokster*, the LW Defendants distributed LimeWire with the object that it be used for copyright infringement.  *Grokster*, 545 U.S. at 918-19.  *Grokster* liability is not dependent on the nature of the copyright infringement or the identity of the copyrighted works.  As the Supreme Court (and subsequent courts) have made clear, it is the distribution of the software with culpable intent that constitutes the unlawful inducement of copyright infringement.  *Grokster*, 545 U.S. at 940 n.13; *Fung*, 2009 WL 6355911, at *10 (same).  The standard is content neutral.  *Grokster*, 545 U.S. at 940 n.13.

*Grokster* itself illustrates this.  The software at issue in *Grokster* was indistinguishable from LimeWire in that it was used predominantly for music, even more so than LimeWire.  Substantially all of the evidence reflecting the *Grokster* defendants' intent to foster copyright infringement related to infringement of music.  *E.g.*, *Grokster*, 545 U.S. at 925-26 (defendants

20

knew of and promoted availability of infringing copies of *songs* in order to attract users); *id.* at 938 (noting intent to create replacement to "Napster['s] . . . ability to download copyrighted *music* files" (emphasis added)); *id.* at 926 (emphasizing availability and promotion of *"Top 40" songs* as key fact); *see also Grokster II*, 454 F. Supp. 2d at 975 (company determined "success" of StreamCast service by availability of *song* files); *id.* at 977 ("StreamCast positioned itself as a Napster alternative where users could continue to download *music* for free" (emphasis added)); *id.* at 978 (software designers knew that software would be used for downloading copies of copyrighted *music*); *id.* at 987 (defendants analyzed rival software by comparing the availability of infringing *songs*). Yet, the Supreme Court did not parse evidence by type of content; evidence of intent to foster any infringement was enough. The Court remanded the case with instructions to consider motions for summary judgment submitted by *both* record company and motion picture studio plaintiffs. On remand, the *Grokster* district court granted summary judgment in favor of all plaintiffs, both record company and motion picture studio plaintiffs. That the evidence of defendants' intent to foster infringement focused almost exclusively on music was of no consequence.

Other recent *Grokster* inducement cases also recognize that evidence of inducement does not depend upon content type. *E.g.*, *Usenet.com*, 633 F. Supp. 2d at 153 (evidence of software piracy – *i.e.*, "warez" – considered in granting summary judgment against defendants for inducing infringement of plaintiffs' music copyrights); *id.* (statements that service was used for "piracy, porno and pictures" cited in granting summary judgment to record companies); *Fung*, 2009 WL 6355911, at *1 (finding defendants liable for inducing infringement of plaintiffs' movies and television shows based in part on evidence relating to music and video games).

Here, as found by the *Arista* court, LimeWire allowed users to share all types of digital files, *e.g., Arista*, 784 F. Supp. 2d at 410-11, and Defendants "*intended* to encourage

infringement by distributing LimeWire." *Id.* at 426 (emphasis in original).  The LW Defendants, therefore, are equally and indistinguishably liable for all acts of copyright infringement by LimeWire users, whether those users downloaded and distributed infringing copies of music, movies, television programs, video games, software, e-books, or any other type of copyrighted content.

### D.   The *Arista* Court Found Defendants Liable for Infringement Occurring During the Applicable Statute of Limitations Period in this Action.

The  LW Defendants also have attempted to argue that collateral estoppel should not apply because there is a different statute of limitations period in this case than there was in *Arista*.  But that argument simply ignores the fact that the timeframe at issue in *Arista* completely subsumes the timeframe at issue here.  In fact, the vast majority of the acts of infringement for which the *Arista* court held Defendants liable took place in the 2009 and 2010 timeframe – the same period of time at issue in this case.

The court in *Arista* granted summary judgment against the LW Defendants for inducement of copyright infringement in May 2010 (finding inducement liability generally) and in April 2011 (finding inducement liability for thousands of specific acts of infringement) – both dates are well within the applicable infringement period in this action.  In its detailed opinions, the court did not carve out liability based on particular time periods, versions of the software, or the allegedly diminished role of LW's founder Mark Gorton over time.  Rather, in granting summary judgment, Judge Wood expressly considered and rejected the LW Defendants' arguments that they had stopped engaging in the most egregious infringing conduct and therefore were not intentionally fostering infringement, or that Gorton was no longer directly involved with the company.  *Arista*, 784 F. Supp. 2d at 431 (considering and rejecting Defendants' claim to have added a "notice" requiring users to agree not to commit copyright infringement); *id.* at

438 (considering and rejecting Gorton's claim that he stepped down as CEO of LW at some point).

Moreover – and dispositively – the infringement periods in this case and *Arista* are effectively co-extensive.  By order dated April 28, 2011, the *Arista* court found that plaintiffs had established ownership of approximately 11,000 copyrighted works.  Servodidio Decl. Ex. 1 (attaching *Arista* Order and Opinion of April 28, 2011).  Most of the acts of direct infringement by LimeWire users for which the *Arista* court found Defendants liable – that is, the unauthorized downloads and distributions of plaintiffs' copyrighted works – took place between February 2009 and  August 2010.  Servodidio Decl. Exs. 5, 6.  Indeed, as set forth in the illustration below, almost 90% of the acts of direct infringement for which the *Arista* court found Defendants liable occurred *during the same time period at issue in this action*, that is, after February 2009. [2]

---

[2]  Further illustrating the equivalency of the time periods, in *Arista*, the LW Defendants challenged some copyrighted works that were infringed between June 30, 2010 and September 13, 2010, on the basis that the plaintiff did not own the relevant copyright during that period of time.  However, the *Arista* court rejected the LW Defendants' argument because the actual copyright owner at the time of the infringement (June 30, 2010 to September 13, 2010) later assigned plaintiff "all rights of action."  Thus, according to the court, "even if Plaintiffs can establish direct infringement only during the period between June 30, 2010 and September 13, 2010, they have established that there is no genuine issue of material fact" as to the LW Defendants' liability for those infringements.  Servodidio Decl. Ex. 1, at 12-13 (attaching *Arista* Order and Opinion of April 28, 2011).



Servodidio Decl. Ex. 6.

In this action, Plaintiffs seek to hold the LW Defendants liable for inducing acts of direct infringement that took place between February 1, 2009 (the applicable statute of limitations) and October 2010 (when the *Arista* court issued its injunction effectively shutting down LimeWire). The acts of direct infringement for which the LW Defendants were held liable in *Arista* took place during that same period of time.  Thus, the *Arista* court already has determined that the LW Defendants' continued distribution of LimeWire induced copyright infringement during the very same infringement period at issue in this case.  LW Defendants are collaterally estopped from claiming otherwise.

## V.   PRINCIPLES OF *STARE DECISIS* ALSO PREVENT A DIFFERENT OUTCOME FROM *ARISTA*.

Even absent application of collateral estoppel, based on hornbook principles of *stare decisis*, the ultimate outcome from *Arista* – a finding of inducement liability against the LW

Defendants – could not change.  The *Arista* liability determination did not go to a jury such that a second jury might reasonably come to a different conclusion.  Judge Wood decided liability on summary judgment, finding that the evidence of Defendants' intent to foster infringement was "overwhelming."  No facts of any consequence have changed.

In reasonably similar circumstances, this Court has held that, even if collateral estoppel were not available, "the *stare decisis* effect of [the prior case] would require [the court] to grant summary judgment in these circumstances."  *Associated Imports v. Int'l Longshoremen's Ass'n*, 609 F. Supp. 595, 597 (S.D.N.Y. 1985) ("*Associated Imports*").  In a prior case, the Supreme Court held that a union's refusal to unload certain ships constituted an illegal secondary boycott under the National Labor Relations Act.  *Int'l Longshoremen's Ass'n v. Allied Int'l, Inc.*, 464 U.S. 212 (1982) ("*Allied*").  "As a result, it was held that the boycott subjected the Union to suits for damages by those harmed by the boycott" under the Labor Management Relations Act.  *Associated Imports*, 609 F. Supp. at 596.  In the second suit, the *Associated Imports* court held that because *Allied* was controlling on the determination that the boycott was an illegal secondary boycott, the *Associated Imports* plaintiffs were entitled to summary judgment under the principle of *stare decisis*.  As the court explained:

> Associated has presented uncontradicted evidence that the boycott which affected it was the same boycott which affected the plaintiff in *Allied*.  The Union has not suggested that the boycott did not exist or that it did not affect Associated.  Nor has it suggested any facts which might differentiate this case from *Allied*.  *Allied* is controlling on the law.  Thus, it is unnecessary to apply collateral estoppel or to address issues raised in *Parklane*.

*Id.*

In *Arista*, the court concluded that the evidence of intent to foster infringement was so unmistakable that the case could not even go to a jury.  A contrary judicial determination in this case would not comport with principles of *stare decisis*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant summary judgment against the LW Defendants on the issue of their liability for inducement of copyright infringement under Count 1 of Plaintiffs' Complaint.

Dated:   October 8, 2012

Respectfully submitted,

By:   ___/s/ Gianni P. Servodidio_____

Steven B. Fabrizio (Bar No. SF-8639)
JENNER & BLOCK LLP
1099 New York Avenue, NW
Suite 900
Washington, DC 20001
Telephone:  (202) 639-6040
Facsimile:  (202) 661-4823

- and -

Gianni P. Servodidio (Bar No. GS-0713)
JENNER & BLOCK LLP
919 Third Avenue
37th Floor
New York, NY 10022
Telephone:  (212) 891-1600
Facsimile:  (212) 891-1699

*Attorneys for Plaintiffs*