UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TWENTIETH CENTURY FOX FILM CORPORATION,   :
VIACOM INTERNATIONAL INC., COMEDY              :
PARTNERS, INC., DISNEY ENTERPRISES, INC.,      :
PARAMOUNT PICTURES CORPORATION, AND         :
WARNER BROS. ENTERTAINMENT INC.                 :        Civil Action No. 12-CV-0818 (HB)
                                                                        :
                                          Plaintiffs,           :        **DEFENDANTS' ANSWER TO**
                                   v.                             :        **PLAINTIFFS' COMPLAINT**
                                                                        :
LIMEWIRE LLC; LIME GROUP LLC; and MARK      :        **JURY TRIAL DEMANDED**
GORTON                                                          :
                                          Defendants.       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Defendants LimeWire LLC ("LimeWire"), Lime Group LLC ("Lime Group"), and Mark

Gorton (collectively, "Defendants"), by and through their attorneys, hereby answer the

Complaint as follows:

Defendants state that anything in the Complaint that is not expressly admitted is hereby

denied.

## NATURE OF THE ACTION

1.       Defendants lack knowledge or information sufficient to form a belief as to the

truth of the allegations of paragraph 1 of the Complaint and on that basis deny the allegations.

2.       Defendants deny the allegations of paragraph 2 of the Complaint except that

defendant LimeWire admits that it has designed, created and distributed the LimeWire software

and that certain users downloaded copyrighted material employing the software.

Defendants further aver that in 2009-2010 the LimeWire software program and the

manner in which it was being promoted and distributed were drastically different than in years

prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

3.     Defendants deny the allegations contained in the first sentence of paragraph 3 of the Complaint. Defendants lack knowledge or information sufficient to admit or deny the allegations contained in the second sentence of paragraph 3 of the Complaint and on that basis deny the allegations. Defendants deny the allegations contained in the third sentence of paragraph 3 of the Complaint.

4.     Defendants deny the allegations in paragraph 4 of the Complaint to the extent they attempt to expand the scope of the court's holding in *Arista Records LLC v. Lime Group LLC*, 715 F.Supp.2d 481 (S.D.N.Y. 2010) (hereinafter "*Arista Records*").

Defendants further aver that the court in *Arista Records* did not consider or make any findings with respect to Defendants' conduct or intent during the 2009-2010 relevant statutory period. The court did not consider the significant changes to defendant LimeWire's business from 2009-2010 to reduce or eliminate infringing uses of its software and network, including among other things, assembling an entirely new management team primarily comprised of seasoned music industry veterans in an effort to eliminate infringing uses of its service, implementing various measures to prevent infringing uses, and ceasing various promotional efforts and advertising campaigns held objectionable in the *Arista Records* litigation. Defendants further aver that the court in *Arista Records* considered the purposeful conduct of Defendants only with respect to infringement of copyrighted music recordings and not to infringement of copyrighted video material.

## JURISDICTION AND VENUE

5.      Defendants lack sufficient knowledge to admit or deny the allegations of paragraph 5 of the Complaint and on that basis deny the allegations.

6.      Defendants admit that personal jurisdiction lies over them in the Southern District of New York but deny the remaining allegations of paragraph 6 of the Complaint.

7.      Defendants admit the allegations in paragraph 7 of the Complaint.

## THE PLAINTIFFS

8.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 8 of the Complaint and on that basis deny the allegations.

9.      Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 9 of the Complaint and on that basis deny the allegations.

## DEFENDANTS

10.     Defendant LimeWire admits that it has designed, promoted, distributed and sold the LimeWire software but denies the remaining allegations of paragraph 10 of the Complaint. Defendants Lime Group and Mr. Gorton deny the allegations of paragraph 10 of the Complaint.

11.     Defendants deny the allegations of paragraph 11 of the Complaint.

Defendants further aver that at all times relevant to the statutory period in this litigation, LimeWire was a defunct entity, and Lime Group was a shell that owns no assets.

12.     Defendants deny the allegations of paragraph 12 of the Complaint but admit that Mr. Gorton was the Chief Executive Officer of defendant LimeWire until 2006.

However, during the 2009-2010 period at issue in this litigation, Mr. Gorton did not hold any position at LimeWire, and had no role in the day-to-day operations of the company. Mr. Gorton's involvement in LimeWire operations in 2009 and 2010 was limited to his role as

corporate officer and shareholder of Lime Group. Moreover, Mr. Gorton did not have a direct financial interest in LimeWire, as his ownership stake was in Lime Group alone, and neither he nor Lime Group drew any profits from LimeWire's revenues during the relevant period. Instead, all revenue generated during 2009 and 2010 was reinvested in LimeWire for research and management initiatives, including technologies that would combat and reduce infringing uses of LimeWire.

Mr. Gorton installed LimeWire with an entirely new management team primarily comprised of entertainment industry veterans who were responsible for running the day-to-day operations of the company, including directing and controlling the design, promotion, marketing, and distribution of the LimeWire software. The new team was put in place so that LimeWire could successfully negotiate licensing deals with copyright holders, eliminate infringing uses of LimeWire's software, and develop a service whereby copyright holders were paid for content appearing on the site. During 2009-2010, Defendants acted with the good faith belief that the entertainment industry wanted to enter into such arrangements with LimeWire and continued operations solely for that purpose.

13.     Defendants deny the allegations of paragraph 13 of the Complaint.

14.     Defendants deny the allegations in the first sentence of paragraph 14 of the Complaint. Defendants deny the allegations in the second sentence of paragraph 14 of the Complaint to the extent they attempt to expand the scope of the court's holding in *Arista Records* to include Mr. Gorton's conduct or intent during 2009 and 2010. Defendants deny the allegations in the third sentence of paragraph 14 of the Complaint.

15.     Defendants deny the allegations of paragraph 15 of the Complaint.

4

16.   Defendants deny the allegations of paragraph 16 of the Complaint but admit that LimeWire is a P2P software application that has been designed to allow users both to exchange files and to handle open-ended schema and xml based searches.

Defendants further aver that any findings pertaining to their conduct or intent in promoting or encouraging use of the LimeWire Software in the *Arista Records* litigation, relate to conduct or intent in periods that predate 2009-2010.  The LimeWire software program promoted in 2009-2010 was drastically different than that in years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

17.   Defendants deny the allegations of paragraph 17 of the Complaint, except that defendant LimeWire admits that it at one time purchased certain types of advertising (such as Google key word advertising) and engaged in certain solicitation of college users that the court in *Arista Records* held were intended to attract infringing users and therefore supported infringement, but LimeWire ceased such conduct prior to 2009.  Moreover, the court in *Arista Records* considered this evidence of Defendant's purposeful conduct and intent only with respect to infringement of copyrighted music recordings and not to infringement of copyrighted video material.

Defendant LimeWire further avers that the LimeWire software program promoted and distributed in 2009-2010 was drastically different than that distributed in years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

18.    Defendants deny the allegations of paragraph 18 of the Complaint but admit that LimeWire developed the LimeWire software using a "Gnutella network protocol" and, subsequently, a "Bittorrent" protocol.

19.    Defendants deny the allegations of paragraph 19 of the Complaint.

Defendants further aver that in 2009-2010 LimeWire undertook a massive, multi-faceted effort (and spent significant resources) to acquire licensing rights to copyrighted works. LimeWire met with representatives from the music industry and other copyright owners to discuss its acquisition of licensing rights.  In 2009, LimeWire successfully entered into a licensing deal with a consortium of independent music labels.  Negotiations with numerous other copyright holders progressed and culminated in draft term sheets and deal terms with certain of these companies.  Indeed, the sole reason that LimeWire was still in existence during 2009-2010 was to negotiate a business relationship with copyright holders through such licensing deals. LimeWire conducted licensing negotiations with, among others, the Recording Industry Association of America, Disney Records, EMI, Lionsgate, Network Music, Sony BMG, Sony Digital, Titan Media, Universal Music Group, Warner Music Group, iTunes, Microsoft, Yahoo, iMesh and AOL.  The proposed business arrangement would have funneled value to the copyright holders through ongoing license royalties and an equity ownership in the business.

Pursuant to this plan, LimeWire hired an entirely new management team primarily comprised of veteran music industry executives to run the day-to-day operational responsibilities of the company and reach a commercial deal with the music industry via licensing agreements. The new management team that led these efforts included George Searle (Chief Executive Officer), Zeeshan Zaidi (Chief Operating Officer), and Francis Kim (Vice President, Strategy and Business Development).  Prior to joining LimeWire, Mr. Searle started, acquired, led, built

and/or sold a number of new media ventures.  For example, he previously served as CEO of

Mediaguide, an airplay media monitoring service, and he also co-founded ConneXus, where Mr.

Searle led efforts to develop an interactive service allowing consumers to use their mobile

phones to recognize and purchase songs played on the radio.  Mr. Zaidi had previously been

affiliated with Sony BMG, RCA Music Group, and Arista Records.  Prior to joining LimeWire,

Mr. Kim had experience at both Warner Music Group and Comcast Networks and was a Senior

Consultant at ProfitLogic, a leading provider of merchandise optimization solutions for the retail

industry.  LimeWire also hired several other entertainment-industry veterans, including Laura

Tunberg, Michael Guido and Ted Cohen, to spearhead licensing negotiations.

     20.     Defendants admit that LimeWire distributed its software in two forms, but deny

that defendants Lime Group or Mr. Gorton distributed such software.  Defendants admit that a

free version of the software called "LimeWire Basic" was offered for download from

LimeWire's website while a different version of the software called "LimeWire Pro" that offered

"faster downloads" was sold by LimeWire for approximately $19, but deny that defendants Lime

Group or Mr. Gorton offered the software for download or sale.  Defendants deny the allegations

of the fourth sentence of paragraph 20 of the Complaint but admit that the two versions of

LimeWire's software were fully compatible with one another.

     21.     Defendants deny the allegations of paragraph 21 of the Complaint but admit that

LimeWire's software application could automatically launch upon startup of a user's computer

for Windows versions only, unless the user designated otherwise.

     Defendant LimeWire further avers that the *Arista Records* court's findings pertaining to

LimeWire's design predate the 2009-2010 statutory period at issue in this litigation, and were

limited to LimeWire's design and functionality as related to downloading music and not video

files.  The LimeWire software program promoted and distributed in 2009-2010 was drastically different than that distributed in years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

22.   Defendants deny the allegations of paragraph 22 of the Complaint.

Defendant LimeWire further avers that the *Arista Records* court's findings pertaining to LimeWire's design predate the 2009-2010 statutory period at issue in this litigation, and were limited to LimeWire's design and functionality as related to downloading music files and not video or movies.  The LimeWire software program promoted and distributed in 2009-2010 was drastically different than that distributed in years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

23.   Defendants deny the allegations of paragraph 23 of the Complaint but admit that the LimeWire website at one point stated that the LimeWire PRO software "gives users better search results, turbo-charged download speeds, connections to more sources, [and] a guarantee of no ads or nagware. . . ."  Defendants, however, lack knowledge or information sufficient to form a belief as to whether this statement was on LimeWire's website in 2009-2010 and on that basis deny the allegations.

Defendant LimeWire further avers that the design of the LimeWire software program and related promotional efforts in 2009-2010, were both drastically different than that of years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

24.   Defendants deny the allegations of paragraph 24 of the Complaint but admit that the LimeWire website operated by Defendant LimeWire at one point contained the statement "Keep in mind that many users disobey copyright laws."  Defendants, however, lack knowledge

or information sufficient to form a belief as to whether this statement was on Lime Wire's website in 2009-2010 and on that basis deny the allegations.

Defendant LimeWire further avers that the design of the LimeWire software program in 2009-2010, was drastically different than that of years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network. These changes included the introduction of an enhanced filtering system to identify copyrighted material which was automatically set to "on" when a user launched the software, which increased the number of users who used the filter, and had a significantly streamlined process for adding new hashes to the database, making it exceedingly difficult for users to share copyrighted files (LimeWire's testing of the filter demonstrated that it had a success rate of ninety-nine percent). A "hash" is a property of a digital file that reflects its content, quality, resolution, length, encoding, and any "ripping" software that has been used to transfer the file. Two audio files with the same sound content share the same hash. LimeWire's filter worked by comparing hash values of copyrighted works to the files being shared over the network; when the filter identified a "hash match," it automatically marked the file as "not shareable" and permanently blocked the file from being uploaded or downloaded. LimeWire also including a website where copyright owners could register files that they wished to prevent from being downloaded, uploaded or shared. Finally, LimeWire added a series of copyright notice warnings to its software intended to place obstacles in the way of users who may have attempted to use the software for infringing purposes. In each subsequent version of the software, the warning appeared more frequently and increased in forcefulness.

25.     Defendants deny the allegations of paragraph 25 of the Complaint and refer to any quoted document for its complete and accurate contents and refer to Judge Wood's decision in *Arista Records* for its complete and accurate contents.

Defendants further aver that the court in *Arista Records* did not consider the significant changes to defendant LimeWire's business in 2009-2010 to reduce or eliminate infringing uses of its software and network. Additionally, the court in *Arista Records* considered the purposeful conduct and intent of Defendants only with respect to infringement of copyrighted music recordings and not to infringement of copyrighted video material.

26.     Defendants deny the allegations of the first sentence of paragraph 26 of the Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second, third and fourth sentences of paragraph 26 of the Complaint and on that basis deny the allegations.

Defendant LimeWire further avers that the design of the LimeWire software program in 2009-2010 was drastically different than that of years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

27.     Defendants deny the allegations of the first sentence of paragraph 27 of the Complaint. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the second sentence of paragraph 27 of the Complaint and on that basis deny the allegations. Defendants lack knowledge or information sufficient to form a belief as to the truth of the allegations in the first portion of the third sentence of paragraph 27 of the Complaint and on that basis deny the allegations.

Defendants further aver that the plaintiffs suffered little or no actual damages (as measured by lost profits) as a result of LimeWire's operation in 2009-2010, and no actual

damages thereafter as the LimeWire network (and therefore information about files available on

it) was dismantled on October 26, 2010 pursuant to consent injunction (LimeWire is now

defunct, and has no employees or revenue. Lime Group is a shell that owns no assets.).  To the

extent that there may have been financial impact, the cause was the use of other substitute (legal

and illegal) services rather than LimeWire.

28.    Defendants deny the allegations of paragraph 28 of the Complaint to the extent

they attempt to expand the scope of the court's holding in *Arista Records*, which was limited to

Defendants' conduct and intent prior to 2009 and considered the purposeful conduct and intent of

Defendants only with respect to infringement of copyrighted music recordings and not to

infringement of copyrighted video material.  The LimeWire software program promoted and

distributed in 2009-2010 was drastically different than that distributed in years prior because of

significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its

software and network.

29.    Defendants deny the allegations of paragraph 29 of the Complaint, other than to

admit that LimeWire realized revenue from the distribution and promotion of its software.

Defendants further aver that the LimeWire software program promoted and distributed in

2009-2010 was drastically different than that distributed in years prior because of significant

changes to LimeWire's business intended to reduce or eliminate infringing uses of its software

and network.

30.    Defendants deny the allegations of the first, second and third sentences of

paragraph 30 of the Complaint but admit that defendant LimeWire distributed the LimeWire

software and provided upgrades and updates to this software.  Defendant LimeWire admits the

allegations of the fourth sentence of paragraph 30 of the Complaint, but defendants Lime Group

and Mr. Gorton deny providing any such technical support. Defendants deny the allegations of the fifth sentence of paragraph 30 of the Complaint.

Defendants further aver that the LimeWire software program promoted and distributed in 2009-2010 was drastically different than that distributed in years prior because of significant changes to LimeWire's business intended to reduce or eliminate infringing uses of its software and network.

31.    Defendants deny the allegations of paragraph 31 of the Complaint except that Defendants lack sufficient knowledge to admit or deny the allegations of paragraph 31 of the Complaint concerning how many copies of the LimeWire software have been downloaded.

Defendants further aver, on information and belief, that little if any of plaintiffs' copyrighted material was downloaded by LimeWire users during the relevant period.

## COUNT 1: INDUCEMENT OF COPYRIGHT INFRINGEMENT

32.    Defendants incorporate paragraphs 1-31 by reference as if fully set forth herein.

33.    Defendants deny the allegations of paragraph 33 of the Complaint.

34.    Defendants deny the allegations of paragraph 34 of the Complaint.

35.    Defendants deny the allegations of paragraph 35 of the Complaint.

36.    Defendants deny the allegations of paragraph 36 of the Complaint.

37.    Defendants deny the allegations of paragraph 37 of the Complaint.

38.    Defendants deny the allegations of paragraph 38 of the Complaint.

39.    Defendants deny the allegations of paragraph 39 of the Complaint.

## COUNT II: CONTRIBUTORY COPYRIGHT INFRINGEMENT

40.    Defendants incorporate paragraphs 1-31 by reference as if fully set forth herein.

41.    Defendants deny the allegations of paragraph 41 of the Complaint.

42.      Defendants deny the allegations of paragraph 42 of the Complaint.

43.      Defendants deny the allegations of paragraph 43 of the Complaint.

44.      Defendants deny the allegations of paragraph 44 of the Complaint.

45.      Defendants deny the allegations of paragraph 45 of the Complaint.

46.      Defendants deny the allegations of paragraph 46 of the Complaint.

47.      Defendants deny the allegations of paragraph 47 of the Complaint.

## COUNT III: VICARIOUS COPYRIGHT INFRINGEMENT

48.      Defendants incorporate paragraphs 1-31 by reference as if fully set forth herein.

49.      Defendants deny the allegations of paragraph 49 of the Complaint.

50.      Defendants deny the allegations of paragraph 50 of the Complaint.

51.      Defendants deny the allegations of paragraph 51 of the Complaint.

52.      Defendants deny the allegations of paragraph 52 of the Complaint.

53.      Defendants deny the allegations of paragraph 53 of the Complaint.

54.      Defendants deny the allegations of paragraph 54 of the Complaint.

55.      Defendants deny the allegations of paragraph 55 of the Complaint.

## AFFIRMATIVE DEFENSES

**First Affirmative Defense**

The Complaint fails to state a claim upon which relief can be granted.

**Second Affirmative Defense**

Plaintiffs have failed to join indispensable parties.

**Third Affirmative Defense**

Plaintiffs' claims are barred by the doctrine of copyright misuse.

**Fourth Affirmative Defense**

Plaintiffs' claims are barred by the doctrine of unclean hands.

**Fifth Affirmative Defense**

Plaintiffs' claims are barred by laches.

**Sixth Affirmative Defense**

Plaintiffs lack standing.

**Seventh Affirmative Defense**

Plaintiffs do not own or control the rights giving rise to the claims purportedly raised in the Complaint.

**Eighth Affirmative Defense**

Plaintiffs' claims are barred in whole or in part to the extent they seek to claim copyright or other intellectual property rights as to works that are in the public domain and therefore not protected.

**Ninth Affirmative Defense**

Any injury that plaintiffs may have allegedly suffered is a result of independent acts taken by third parties for which Defendants are not responsible.

**Tenth Affirmative Defense**

Plaintiffs' claims are barred because they cannot establish that the accused products or services are incapable of substantial non-infringing uses.

**Eleventh Affirmative Defense**

Plaintiffs' claims are barred by license, consent, acquiescence, waiver and estoppel.

**Twelfth Affirmative Defense**

Plaintiffs' claims are barred by the Digital Millennium Copyright Act.

**Thirteenth Affirmative Defense**

Plaintiffs' claims are barred by the doctrine of fair use.

**Fourteenth Affirmative Defense**

Plaintiffs' claims for statutory damages are barred by the U.S. Constitution.

**Fifteenth Affirmative Defense**

Plaintiffs' claims are barred for lack of subject matter jurisdiction to the extent plaintiffs lack valid registrations of copyrights alleged in the Complaint.

**Sixteenth Affirmative Defense**

Plaintiffs' claims are barred to the extent they have caused fraud upon the Copyright Office.

**Seventeenth Affirmative Defense**

Plaintiffs' claims are barred by the first sale doctrine.

**Eighteenth Affirmative Defense**

Plaintiffs' claims are barred by their failure to mitigate damages.

**Nineteenth Affirmative Defense**

Plaintiffs' claims are barred to the extent they have forfeited or abandoned copyright.

**Twentieth Affirmative Defense**

Plaintiffs' claims are barred because of deceptive and misleading advertising in connection with the distribution of their copyrighted works.

**Twenty-First Affirmative Defense**

Plaintiffs' claims are barred to the extent any persons, based on whose behavior plaintiffs seek to hold Defendants liable, are innocent infringers.

**Twenty-Second Affirmative Defense**

Plaintiffs' claims are barred by the applicable statute of limitations.

**Twenty-Third Affirmative Defense**

Plaintiffs' claims are barred to the extent their copyrights are invalid/unenforceable.

## ADDITIONAL DEFENSES

Defendants reserve the right to supplement or amend this answer, including through the addition of further affirmative defenses, based upon the course of discovery and proceedings in this action.

## DEMAND FOR A JURY TRIAL

Defendants hereby demand a trial of this action by jury.

Dated: New York, New York
      October 23, 2012

Respectfully Submitted,

Richard J. Holwell
Michael S. Shuster
Avi Israeli
HOLWELL SHUSTER
& GOLDBERG LLP
335 Madison Avenue, 9th Floor
New York, NY 10017
Phone: (646) 837-5151

*Attorneys for Defendants*

16